45 F.3d 443
NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
 Mary GARROVA, Petitioner,
v.
OFFICE OF PERSONNEL MANAGEMENT, Respondent.
 No. 94-3160.
 United States Court of Appeals, Federal Circuit.
 Dec. 28, 1994.
 
 Before RICH, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and BRYSON, Circuit Judge.
 DECISION
 RICH, Circuit Judge.
 
 
 1
 Ms. Garrova petitions for review of a decision of the Merit Systems Protection Board (MSPB or Board) issued on 10 December 1993 in Docket No. SF0831930457-I-1. The Board denied review of its initial decision dated 5 August 1993. In its initial decision, the Board affirmed the action of the Office of Personnel Management (OPM or agency), which decided that Ms. Garrova was not entitled to survivor annuity benefits as the former spouse of Mr. Garrova. We affirm.
 
 DISCUSSION
 
 2
 * Ms. Mary Garrova married Mr. Charles Garrova on 10 October 1942. On 30 October 1975, while still married to Ms. Garrova, Mr. Garrova applied for retirement benefits. On the application, he did not elect a survivor annuity benefit for Ms. Garrova. In particular, he certified as follows:
 
 
 3
 I have been informed of my right to elect a reduced annuity for myself with a survivor benefit payable to my spouse after my death. I have had the rates of annuity that I would receive with and without a survivor benefit explained to me. I still elect to receive an annuity payable only during my lifetime with no survivor annuity payable after my death.
 
 
 4
 On 31 December 1975, Mr. Garrova retired from the United States Postal Service while still married to Ms. Garrova. On 29 January 1979, Mr. Garrova and Ms. Garrova divorced by Judgment of Dissolution (Judgment). The Judgment also entered the couple's property settlement agreement, awarding Ms. Garrova some of Mr. Garrova's monthly annuity benefit. The pertinent language in the Judgment provides as follows:
 
 
 5
 [Ms. Garrova] is awarded one-half of the retirement and pension plan of [Mr. Garrova] with [the] United States Post Office[,] and [Mr. Garrova] is ordered to pay to [Ms. Garrova], as received, one-half of the pension as [Ms. Garrova's] distributive share of her community property interest in said pension fund. [Ms. Garrova] shall be entitled to all benefits of said retirement and pension plan to the extent of one-half thereof[,] and [,] if permitted by the United States Post Office [, Mr. Garrova] shall assign to [Ms. Garrova] a one-half interest thereof to the end that said monies or benefits shall be paid directly to [Ms. Garrova] commencing December 15, 1978 and continuing until death of [Ms. Garrova].... Upon the death of [Mr. Garrova], [Ms. Garrova] shall receive all remaining benefits to which she is entitled from said retirement fund as a holder of one-half interest.
 
 
 6
 Ms. Garrova's attorney at the time forwarded a copy of the Judgment to the OPM, which thereafter began paying benefits to Ms. Garrova in June of 1979. The agency continued to pay the benefits to Ms. Garrova until Mr. Garrova's death on 5 July 1992.
 
 
 7
 After Mr. Garrova's death and in response to an inquiry from Ms. Garrova dated 13 August 1992, the agency found, pursuant to 5 C.F.R. Sec. 831.622(a), that Ms. Garrova was not entitled to a survivor annuity as the former spouse of Mr. Garrova. Ms. Garrova, however, asserts that she is entitled to continue to receive annuity payments.
 
 II
 
 8
 To prevail, Ms. Garrova has the burden of proving by a preponderance of the evidence that (1) she is the surviving widow of Mr. Garrova, or (2) she meets the requirements of the Spouse Equity Act of 1984 (the Act) for a former spouse annuity. It is undisputed that she is not a surviving widow. She also fails to meet option (2) because she did not submit an application for an annuity before the Act's 7 May 1989 deadline.
 
 
 9
 Ms. Garrova asserts that, although she did not comply with the applicable statutory requirements, she could reasonably expect to receive survivor benefits after her ex-husband's death based on her receipt of benefits from the OPM during his lifetime. Unfortunately for Ms. Garrova, in Office of Personnel Management v. Richmond, 496 U.S. 414 (1990), rev'g 862 F.2d 294 (Fed.Cir.1988), the United States Supreme Court shattered any hope she may have had of succeeding with this argument.
 
 
 10
 The government acts challenged in Richmond were more egregious than the acts Ms. Garrova challenges in the case sub judice. In Richmond, Charles Richmond sought advice to avoid exceeding "a statutory limit on earnings that would disqualify him from a disability annuity." 496 U.S. at 416. In response, a government employee gave Mr. Richmond erroneous oral and written advice. He followed the advice and lost six months of government benefits. Mr. Richmond later claimed that the erroneous and unauthorized advice entitled him to receive the lost benefits from the government under a theory of equitable estoppel. Contrary to the statutory terms, he wanted the government to pay benefits to him because of his detrimental reliance on the erroneous advice. Id. The United States Supreme Court held that where the law does not otherwise allow monetary benefits, the government cannot be estopped from denying those benefits based on equitable considerations.[1] The Supreme Court thus, in harmony with every prior finding of estoppel that it had reviewed,[2] reversed the court of appeals' holding that the government could be equitably estopped under the facts of Richmond. Id. at 434.
 
 
 11
 Comparing the Richmond facts with the facts of the case sub judice, here, the OPM failed to provide any information; Ms. Garrova claims that this is part of the problem. First, the agency failed to notify her that Mr. Garrova did not elect a survivor annuity benefit for her. Second, the agency failed to notify her that she should apply for survivor annuity benefits before 7 May 1989. The OPM, however, did not have a statutory duty under the pertinent statute to afford a current or former spouse the notice suggested by Ms. Garrova. Since an incorrect but affirmative answer builds unjustified confidence, we believe that failing to provide any information is less egregious than providing erroneous information. Accordingly, Richmond is dispositive.
 
 
 12
 Even without Richmond, however, Ms. Garrova's equitable estoppel argument is dubious. By paying Ms. Garrova one-half of Mr. Garrova's benefits during his lifetime, the OPM did nothing more than what it was statutorily bound to do after receiving notice of the Judgment of Dissolution. The OPM never dubbed the benefits she received as "survivor benefits," and the Judgment merely provides that, upon the death of Mr. Garrova, Ms. Garrova was to receive all remaining benefits "to which she was entitled." Unfortunately for her, she was not "entitled" to any further benefits after the death of Mr. Garrova. He clearly elected to collect, and collected, larger payments during his lifetime, rather than to provide survivor benefits for Ms. Garrova. Any expectation on her part that the benefits OPM paid her during her ex-husband's lifetime would continue after his death was not reasonable.
 
 III
 
 13
 Our review of Board decisions is defined and limited by statute. We must affirm the Board's decision unless it is:
 
 
 14
 (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
 
 
 15
 (2) obtained without procedures required by law, rule, or regulation having been followed; or
 
 
 16
 (3) unsupported by substantial evidence.
 
 
 17
 5 U.S.C. Sec. 7703(c) (1988). We have carefully considered Ms. Garrova's arguments, and we are sympathetic to her situation and the financial hardship that our decision may place upon her. We find, however, no reversible error in the Board's holding that Ms. Garrova has no right, statutory or otherwise, to the survivor benefits that she is claiming. We therefore affirm.
 
 
 
 [1]
 See, e.g., 496 U.S. at 432 ("funds may be paid out only on the basis of a judgment based on a substantive right to compensation based on the express terms of a specific statute"); id. at 433 ("To open the door to estoppel claims would only invite endless litigation over both real and imagined claims of misinformation by disgruntled citizens, imposing an unpredictable drain on the public fisc.")
 
 
 [2]
 See, e.g., 496 U.S. at 422 ("we have reversed every finding of estoppel that we have reviewed"); id. at 434 (the Supreme "Court has never upheld an assertion of estoppel against the Government by a claimant seeking public funds")